Dear Chief Wiltz:
You have requested an opinion of the Attorney General, in your capacity as the elected Chief of Police of the Village of Parks (the "Village"), regarding your participation in the Safe and Sober Summertime Holiday Overtime Program (the "Program") offered by the Louisiana Highway Safety Commission, Department of Public Safety and Corrections (the "Commission"). You also ask whether the Mayor is authorized to withhold mail addressed to the Village of Parks, Parks Police Department.
Under the Program, various ranks within municipal police departments are given the opportunity to work overtime. The Commission does not make a determination as to which police officers may or may not work and be paid for the additional hours. Based upon the information you have furnished us, the Commission notes that many small town police chiefs participate in the Program. The Fair Labor Standards Act ("FLSA") gives jurisdictions the option of paying "Administrative Personnel" (e.g., police chiefs) at a rate of 1+ time, straight time or no additional compensation at all. Obviously, if the jurisdiction (i.e., the Village) selects the last option (i.e., no compensation) the police chief may choose not to work these overtime hours.
The Commission cannot usurp the authority of the Village by mandating which option to implement. It does, however, encourage local jurisdictions to allow their police chiefs to earn the overtime. Thus, the Commission recognizes that the federally funded overtime pay may be the only opportunity for chiefs of police to earn overtime during the year.
You specifically ask whether you are entitled to participate in this Program and be paid the overtime compensation.
As you are aware, the Village is a Lawrason Act municipality governed by the provisions of R.S. 33:321, etseq. R.S. 33:423 provides with respect to the chief of police as follows:
 "A.The marshal shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement in the municipality and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws . . . .
R.S. 33:404.1 provides with regard to the compensation of the chief of police as follows:
 "The board of aldermen shall by ordinance fix the compensation of the mayor, aldermen, clerk, chief of police, and all other municipal officers. The board of aldermen shall also by ordinance have the authority to increase or decrease the compensation of any nonelected municipal officer and to increase the compensation of elected officials except as otherwise provided by R.S. 33:405(G). However, the board of aldermen shall not reduce the compensation of the mayor or any elected official during the term for which he is elected."
In interpreting the above provisions, this office has consistently opined that the Chief of Police can not be paid for overtime work. Attorney General Opinion Nos. 96-88, 79-848, 79-459 and 78-1107. Therein, it was reasoned that an elected chief of police is paid a salary commensurate with the duties of his office, and paying overtime would not coincide with the work he is required to perform. This reasoning finds support from the fact that when a chief of police is elected, his salary is set at the time of the election. Further, in the event the municipal governing authority determines that the duties are not adequately reflected in this compensation, it may raise his salary pursuant to R.S. 33:404.1.
We also draw your attention to Attorney General Opinion No. 93-777 which concludes that the chief of police is an elected official who should serve on a full-time basis. See also Attorney General Opinion Nos. 90-316 and 87-696. The author further concludes that pertinent statutes reveal no prohibition against the chief of police engaging in private employment during hours customarily considered to be off-duty.
As previously noted, Section 423 mandates that the chief of police ". . . shall perform all other duties required of him by ordinance . . . ." It is conceivable that the adoption of an ordinance by the aldermen establishing your specific duties and day-to-day responsibilities as chief of police could possibly conflict with the hours devoted to other employment, such as the federally funded Program at issue.
Further, care should be taken that additional compensation received for other employment does not conflict with laws relating to ethics for elected officials. Accordingly, we recommend that you present this issue to the Louisiana Board of Ethics for their review. We turn now to your second question.
As previously noted, R.S. 33:423 vests in the chief of police the general responsibility for law enforcement within the Village. The legislative powers of the Village are delegated by Section 362 to the Board of Aldermen. The duties and responsibilities of the Mayor are set forth in Section 404. The interaction between these legal provisions is discussed in Cogswell v. Town ofLogansport, et al, 321 So.2d 774 (La.App. 2d Cir. 1975). Therein, the court held:
 "Between 1898 and 1970, there were several cases and numerous published opinions of the Attorney General of Louisiana wherein there was considered the respective rights, powers, duties and responsibilities of the mayor, the aldermen and the marshal-chief of police of municipalities which were incorporated under the Lawrason Act.
 In a 1968 decision, the Supreme Court noted that the duties and powers of the chief of police of [a] Lawrason Act municipality were not defined by statute or by jurisprudence, but observed:
 `Because of the nature of his office, however, he is the chief law enforcement officer of the City and, as such, has supervision of the police department.' Lentini v. City of Kenner, 252 La. 413, 211 So.2d 311, 312 (La. 1968).
 These powers and duties are often referred to as `inherent powers' and it is an established principle that the mayor and aldermen may not revoke the `inherent powers' of an elected chief of police of a Lawrason Act municipality.
 We believe the statutory design . . . and the jurisprudence are clear. The `general responsibility for law enforcement' granted the chief of police by section 423 means the power to supervise the operation of the police department and assign its personnel and equipment, subject to the statutory authority which may be exercised by the mayor and aldermen under other sections of the Lawrason Act, as amended.
 . . . the mayor and aldermen of a Lawrason municipality may exercise their authority over an elected chief of police and the police department as long as the power of the chief of police to supervise the operation of the department and assign its personnel and property is not revoked, restricted or limited."
As can be seen from the above, among the inherent powers of the elected chief of police is the supervision of the day-to-day operations of his department. Conversely, we find nothing in the above cited authorities which authorize the mayor and aldermen to exercise control over the everyday business affairs of the police department.
We are of the opinion that the orderly receipt of mail properly addressed to the Chief of Police and/or the Parks Police Department falls within the inherent powers of the elected Chief of Police. Any action taken by the Mayor and/or Board of Aldermen which unreasonably interferes with this process constitutes an infringement on this inherent power which is contrary to the laws as interpreted by the Court in theCogswell case. This prohibited activity would include the withholding of mail that is addressed to the "Village of Parks, Parks Police Department".
In summary, it is the opinion of this office that the Chief of Police is not eligible to receive additional compensation for overtime. While the Chief of Police may engage in private employment, such employment must not conflict with the ordinance establishing his daily responsibilities and/or the Code of Ethics for Elected Officials. Finally, the Mayor and/or Board of Aldermen may not withhold mail which is addressed to the Chief of Police and/or the Police Department.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB
ATTORNEY GENERAL
 By: _________________________________ ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob, III/JMM/cla
Date Received:
Date Released:
Robert E. Harroun, III Assistant Attorney General